*1307 OPINION.
Lovn:
This is purely a fact case. We are called upon to determine:
(1) The market value of $145,788.73 par value of improvement district bonds issued by the City of Livingston and taken by petitioner in payment for work done by it.
(2) The amount of allowable depreciation and obsolescence on machinery and equipment, the depreciated cost of which on January 1, 1921, was $16,916.24.
At the hearing and in the argument of counsel, a question was raised as to the legal status of the bonds in question. It was contended by counsel for the petitioner that under statutory law, as well as under the resolutions adopted by the city council relative to such bond issue, and by the terms and stipulations of the bonds themselves, that they did not constitute an obligation to pay on the part of the City of Livingston or of the several improvement districts as such; that in effect they were mere evidences of indebtedness to secure the payment of which a statutory lien on the property in the several districts was fixed; that it was only a liability against the real estate of the district, the liability of each lot or unit being-measured by the number of square feet in its area; that by reason of such nature of said bonds they were not what might be termed *1308 commercial securities and hence had a less market as well as intrinsic value.
Counsel for respondent contended that the bonds constituted an obligation to pay on the part of the city, as such, and if not on the part of the city, then on the part of the several improvement districts as such, and that the real estate of the district as a whole, and not by parcels for aliquot parts of the debt, was liable, and that if such be the status of such bonds their market value as well as intrinsic value was greater than represented by the petitioner.
It was clearly shown by the evidence in the case that neither the officers of the city, the officers of petitioner, noT the bond brokers considered the bonds as contended for by counsel for the respondent, but all parties deemed them to be, and handled them as contended for by petitioner. That being true, their market value was certainly determined and fixed in the light of that view of the situation.
We deem it unnecessary to attempt to decide the legal question as to whether or not in a contest between the holder of the bond on the one side, and the city or a district on the other side, the decision would be one way or the other. We are to determine under the then existing conditions as disclosed by the evidence what the market value of those bonds was at the close of 1921. Without summarizing the evidence or analyzing it'by discussion, we believe the evidence as set out in our findings of fact clearly warrants the conclusion that said bonds at the close of 1921 did not have a market value in excess of 63 per cent of their par value, and as the petitioner valued them in its return at approximately that valuation, we approve its action in that respect and reverse the action of the Commissioner.
With respect to the disallowance of depreciation and obsolescence complained of in assignment of error No. 2, we conclude that the evidence warrants the approval of petitioner’s action in its return on that issue. The machinery and equipment was purchased for a specific purpose. In the year 1921 it was operated on double time and subjected to extraordinary wear and tear. Its depreciation under such circumstances must have greatly accelerated. When that work was completed, the evidence shows that it was but little better than a junk pile. Petitioner had no further use for it and there was no market for machinery in that condition. The evidence discloses the fact that the president in 1922 had an offer of $4,100 which he desired to accept, but for some cause the deal was not consummated. Aside from that offer, $2,000 was the maximum offer. In its return for 1921 petitioner estimated the salvage value at $3,200 and took a deduction on account of depreciation and obsolescence of $13,384.24, which represented the difference between said salvage value and the depreciated cost as of January 1,1921, with some minor adjustments.
*1309 In view of all the evidence on that question we believe that the petitioner was entitled to the deduction claimed in its return, and reverse the action of the Commissioner on that point.
The third assignment of error was waived, hence, as to that issue, the action of the Commissioner is approved.
The fourth assignment of error is a mere formal one, and is determined in the determination of assignments Nos. 1, 2, and 3.
The fifth assignment of error, in part, is also a formal one, the disposition of which is controlled by our determination of assignments Nos. 1, 2, and 3, but another feature of the fifth assignment complains of the failure of the Commissioner to allow a deduction of $9,138.22, which the petitioner omitted to claim and take in its return, and which represents interest paid on the bonds (the same as those hereinbefore described) held by petitioner. At the hearing it was stipulated and agreed that that point was not in issue, as the deficiency notice, together with the computation^ttached, showed that the Commissioner had allowed that deduction. Referring to that computation, we find that said deduction was so made.
Accepting that stipulation at its face value, we will not further discuss that assignment of error.

Judgment will be entered under Rule 50.